UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ULISES LUCAS-HERNANDEZ,<br><br>Defendant. | Case No.:  19MJ24522-LL<br><br>**ORDER DENYING:**<br>**(1) DEFENDANT'S MOTION TO DISMISS; (2) DEFENDANT'S MOTION TO PROHIBIT COURTHOUSE ARREST; AND (3) DEFENDANT'S MOTION TO STAY**<br><br>**[ECF No. 46]** |

Currently before the Court are Defendant's: (1) Motion to Dismiss; (2) Motion to Prohibit Defendant's Civil Arrest at Court; and (3) Motion to Stay the Proceedings. ECF No. 46. For the reasons set forth below, the Court **DENIES** Defendant's Motions.

## BACKGROUND

Defendant is charged with a single misdemeanor count of violating 8 U.S.C. § 1325(a)(1). ECF No. 1. On February 20, 2020, the Court held a motion hearing. ECF No. 21. On July 30, 2020, the Court held a second motion hearing on the Parties' supplemental briefs regarding the admissibility of certain evidence from Defendant's prior deportation proceeding. ECF No. 45.

1

On July 27, 2020, the Court granted Defendant leave to file additional motions. ECF No. 43. On July 29, 2020, the Court denied Defendant's corresponding motion to exceed the twenty-five-page limit in these additional motions and struck Defendant's original versions of the instant Motions for exceeding these limits. ECF No. 44. Defendant subsequently re-filed the current versions of the instant Motions on September 1, 2020. ECF No. 46. The Government filed a Response on September 2, 2020 [ECF No. 47] and a Supplemental Memorandum on September 3, 2020 [ECF No. 48].

## ANALYSIS

### I.   Motion to Dismiss

#### A.   Parties' Positions

Defendant argues that the criminal charges against him must be dismissed because § 1325 is "presumptively unconstitutional" under Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977). ECF No. 46 at 1. Defendant contends that § 1325 was enacted with a discriminatory purpose and disparately impacts Mexican and Latinx immigrants, in violation of the Equal Protection Clause. Id. at 3–4, 13–14.

Defendant argues that the law criminalizing illegal entry into the United States at 8 U.S.C. § 1325 has an "uncomfortable past" and is rooted in the immigration laws of the 1920s, for which "racism and eugenics" were a "motivating factor." Id. at 2–3, 5. He contends that the National Origins Act of 1924 and the Undesirable Aliens Act of 1929 were enacted because of racist beliefs to "keep the nation's 'racial strains' predominantly Anglo-Saxon." Id. at 7–10. Defendant argues that looking back to the legislative history of the 1920s immigration laws is appropriate under the Supreme Court's recent opinions in Ramos v. Louisiana, 140 S. Ct. 1390 (2020), and Espinoza v. Montana Department of Revenue, 140 S. Ct. 2246 (2020). Id. at 12. Defendant reads these opinions to mean that "not only do courts examine the racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." Id. at 13. Defendant further argues that § 1325 disparately affects Mexican and other Latinx defendants because they

constitute the overwhelming majority of arrests. Id. at 13–14.

Defendant claims that because § 1325 has a discriminatory purpose stemming from the 1920s legislative history and a disparate impact, the burden shifts under Arlington Heights to the Government to show that the Undesirable Aliens Act of 1929 would have passed "even had the impermissible purpose not been considered." Id at 14 (quoting Arlington Heights, 429 U.S. at 270 n.21). Defendant briefly contends in a one-sentence footnote that courts apply strict scrutiny to laws that are "motivated by a racial purpose or object" under Arlington Heights. Id. at 5 n.6 (citing Hunt v. Cromartie, 526 U.S. 541, 546 (1999)). Finally, Defendant asks the Court for an evidentiary hearing on these issues. Id. at 15.

The Government opposes for several reasons. It argues that Defendant's claim is not justiciable because it is based on the legislative history of a law different than the one that Defendant is charged with, since attempted illegal entry in § 1325(a)(1) was not criminalized until the Immigration Act of 1990, which was several decades after the legislative history presented by Defendant. ECF No. 47 at 4–5. The Government also argues that Arlington Heights is inapplicable because Congress's expansive authority over immigration affairs renders any review of its immigration laws subject to deferential, rational-basis review in the Ninth Circuit. Id. at 5–7. The Government contends that § 1325, which criminalizes attempted illegal entry, is rationally related to the legitimate government interest of deterring "all aliens from illegally entering the United States" and does not violate the Equal Protection Clause. Id. at 9–10.

The Government argues that even if Arlington Heights is applicable, Defendant fails to show either a discriminatory purpose or a disparate impact. Id. at 10–14. The Government contends that the legislative history of the 1920s is not applicable to finding a discriminatory motive in § 1325 because: (1) the statutory framework of modern immigration law came in 1952 when Congress replaced prior disparate statutes with the comprehensive Immigration and Nationality Act; (2) Defendant's charge of attempted illegal entry was not a crime until 1990; and (3) § 1325 has been updated or modified by

1   Congress in 1986, 1991, and 1996. Id. at 11. The Government also disputes Defendant's

2   claim of disparate impact, arguing that the statistics Defendant relies on to show a high

3   percentage of Mexican and Latinx persons affected by § 1325(a)(1) are due to Mexico's

4   geographic proximity to the United States and not discrimination. Id. at 9–10, 14.

5       **B.   Analysis**

6       Under Arlington Heights, "[t]o plead animus, a plaintiff must raise a plausible

7   inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant

8   decision." Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891,

9   1915 (2020) (quoting Arlington Heights, 429 U.S. at 266). A showing of discriminatory

10  purpose can be found by considering factors such as "the impact of the official action" and

11  whether it "bears more heavily on one race than another," the "historical background of the

12  decision" and whether it "reveals a series of official actions taken for invidious purposes,"

13  and the "specific sequence of events leading up to the challenged decision" and whether it

14  departs procedurally or substantively from normal practice. Arlington Heights, 429 U.S.

15  at 266–69.

16      The Court finds that Defendant's Arlington Heights analysis of § 1325(a)(1) is

17  fatally flawed because it relies entirely on legislative history from the 1920s, decades

18  before § 1325(a)(1) was enacted. The Government correctly identifies two key subsequent

19  enactments whose legislative history Defendant has completely ignored: the Immigration

20  and Nationality Act of 1952 and the Immigration Act of 1990.[1]

21      The Court does not agree with Defendant's contention that two recent Supreme

22  Court cases—Ramos and Espinoza—"both confirm that not only do courts examine the

---

25  [1] The Government argues that Defendant's tethering of the attempted illegal entry statute
26  to legislative history of statutes that did not criminalize attempted illegal entry makes this
    issue non-justiciable because it asks the Court "to adjudicate the constitutionality of a crime
27  which is not even charged." ECF No. 47 at 4–5. The Court disagrees. The Court's analysis
    is confined to the constitutionality of § 1325(a)(1), the charging statute in this case, under
28  the arguments presented by Defendant.

4

racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." ECF No. 46 at 13. In <u>Ramos</u>, the Court considered whether two states' laws allowing non-unanimous jury verdicts in criminal trials were constitutional. <u>Ramos</u>, 140 S. Ct. at 1394. The Court found that "the Sixth Amendment right to a jury trial—as incorporated against the States by way of the Fourteenth Amendment—requires a unanimous verdict to convict a defendant of a serious offense." <u>Id.</u> The Court noted that the state laws allowing non-unanimous verdicts were adopted for racist reasons, although its holding was based primarily on an analysis of common law rights to a unanimous jury. <u>Id.</u> at 1394–97. In his dissent, Justice Alito criticized the majority's reference to discriminatory motives for the state laws, calling them "deplorable" if true, but irrelevant to the broad constitutional question before the Court. <u>Id.</u> at 1426 (Alito, J., dissenting). He noted that the two states had later readopted their non-unanimous jury rules for non-discriminatory reasons, and that the Court's holding requires jury unanimity in all state criminal trials, regardless of the motive behind a contrary law. <u>Id.</u> In response, the majority explained that consideration of the reasons for the adoption of the state laws at issue was part of the Court's functional analysis required by the Sixth Amendment. <u>Id.</u> at 1401 n.44. The majority confirmed that "a jurisdiction adopting a nonunanimous jury rule even for benign reasons would still violate the Sixth Amendment." <u>Id.</u>

In <u>Espinoza</u>, the Supreme Court held that the Montana Supreme Court violated the Free Exercise Clause when it applied the "no-aid provision" of the Montana Constitution to bar religious schools from benefiting from a state program that provided tuition assistance to parents who send their children to private schools. <u>Espinoza</u>, 140 S. Ct. at 2254–56. In a concurring opinion that was not joined by any other justices, Justice Alito argued that <u>Ramos</u> set a precedent that requires the Court to examine the original motivation behind the exclusion of religious schools in Montana's no-aid provision, which was based on anti-Catholic sentiment. <u>Id.</u> at 2268–71 (Alito, J., concurring). Justice Sotomayor was the only justice to address Justice Alito's argument regarding the precedent of <u>Ramos</u>. In her dissent, she cited to her own concurrence in <u>Ramos</u> that "[w]here a law

otherwise is untethered to [discriminatory] bias—and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it—the new law may well be free of discriminatory taint." Id. at 2293 n.2 (Sotomayor, J., dissenting) (quoting Ramos, 140 S. Ct. at 1410 (Sotomayor, J., concurring in part)).

The Court finds that these cases do not support Defendant's contention that § 1325(a)(1) should be judged according to legislative history from laws enacted decades before, and Defendant has not argued that § 1325(a)(1) would be unconstitutional under an Arlington Heights analysis of relevant legislative history.

The Court also finds that Defendant has not shown racial discrimination with statistics on the disparate impact of § 1325(a)(1) on Mexican and Latinx persons. The disparate impact is more readily explained by the geographic proximity of the border to Mexico and Latin America than by animus. See Dep't of Homeland Sec., 140 S. Ct. at 1915–16 (finding that a disparate impact on DACA rescission on Latinos from Mexico did not establish a plausible equal protection claim "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program" and "[w]ere this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds."). Additionally, disparate impact alone, with no further evidence of discriminatory intent, is not sufficient to invalidate a facially neutral law under the Equal Protection Clause. Washington v. Davis, 426 U.S. 229, 242 (1976) ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution.").

Because Defendant has failed to carry his threshold burden of showing that racial discrimination was a motivating factor for the enactment of § 1325(a)(1), he has failed to prove a violation of the Equal Protection Clause. See Arlington Heights, 429 U.S.

at 270–71 ("Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision. This conclusion ends the constitutional inquiry.").

The Court agrees with the Government that rational-basis review is the appropriate level of scrutiny to apply to an analysis of the constitutional validity of § 1325(a)(1) under the Equal Protection Clause.[2] See Hernandez-Mancilla v. Holder, 633 F.3d 1182, 1185 (9th Cir. 2011) ("We review equal protection challenges to federal immigration laws under the rational basis standard and uphold them if they are 'rationally related to a legitimate government purpose.'"). The rational-basis test is deferential and is met when a law is rationally related to a legitimate government purpose. See id.; Heller v. Doe by Doe, 509 U.S. 312, 320 (1993) (finding the rational-basis test met "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose").

The Court finds that §1325(a)(1) satisfies the rational-basis test. The Government has a legitimate interest in deterring illegal entry to the United States and § 1325(a)(1) is rationally related to this interest because it criminalizes attempted illegal entry. See United States v. Hernandez-Guerrero, 147 F.3d 1075, 1078 (9th Cir. 1998) (finding that 8 U.S.C. § 1326—a statute related to § 1325—"is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution that it provides, Congress's immigration-regulation authority would be fatally undermined—all bark and no bite").

---

[2] Additionally, in the Arlington Heights analysis, in the absence of a showing of a discriminatory purpose for a challenged facially-neutral law, the appropriate level of scrutiny is the rational basis standard. See Arlington Heights, 429 U.S. at 265–66 ("When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference [that courts normally afford legislators and administrators] is no longer justified."); Washington v. Davis, 426 U.S. at 246 (upholding the validity of a test challenged on equal protection grounds after finding no evidence of a discriminatory purpose and determining that the test is "neutral on its face and rationally may be said to serve a purpose the Government is constitutionally empowered to pursue").

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Dismiss based on <u>Arlington Heights</u>. <u>See</u> <u>United States v. Morales-Roblero</u>, No. 3:19-mj-24442-AHG, 2020 U.S. Dist. LEXIS 168354, at *21–30 (S.D. Cal. Sept. 14, 2020). The Court also declines to set an evidentiary hearing. <u>See</u> <u>United States v. Irwin</u>, 612 F.2d 1182, 1187 (9th Cir. 1980) ("[I]f the affidavits show as a matter of law that appellant was or was not entitled to relief, no [evidentiary] hearing was required.").

## II.   <u>Motion to Prohibit Arrest at Courthouse</u>

Defendant seeks an order prohibiting immigration agents from effectuating Defendant's civil removal arrest inside or directly outside the courthouse after his criminal case concludes. ECF No. 46 at 17.

As an initial matter, the Court must first consider how to properly characterize Defendant's request for relief. In his Motion, Defendant requests that the Court exercise its "supervisory powers" to "remedy a constitutional or statutory violation[.]" <u>Id.</u> at 18. In support, Defendant points to the Ninth Circuit's decision in <u>United States v. Barrera-Moreno</u>, 951 F.2d 1089 (9th Cir. 1991). <u>Id.</u> The <u>Barrera-Moreno</u> decision however was more narrowly directed to a district court's supervisory power to dismiss an indictment. 951 F.2d at 1093. This is not the situation here. Instead, the Court finds Defendant's request is more properly characterized as a request for injunctive relief. <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 428 (2009) (noting that an injunction is the "means by which a court tells someone what to do or not to do").

Having now properly framed Defendant's request, the Court finds that it lacks the authority to grant it.

///

///

///

///

///

///

19MJ24522-LL

Under 28 U.S.C. § 636(b)(1)(A):

> [A district] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, <u>except a motion for injunctive relief</u>, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

<u>Id.</u> (emphasis added). Nothing in the Federal Magistrate Act affirmatively provides the undersigned with the authority to issue an injunction in these misdemeanor proceedings. <u>See</u> <u>Teczon-Marin v. Dembin</u>, No. 20-cv-1493-LAB, 2020 U.S. Dist. LEXIS 142861, at *3 (S.D. Cal. Aug. 10, 2020) ("Judge Dembin <u>couldn't</u> enjoin Teczon-Marin's arrest: Magistrate Judges are not authorized by law to issue injunctive relief.") (emphasis in original).

Indeed, Defendant has not provided any legal support for how this Court has the authority to grant his request. The four cases cited by Defendant are inapposite. Each of these cases were civil proceedings filed specifically against the United States Immigration and Customs Enforcement or the United States Department of Homeland Security for declaratory or injunctive relief. <u>See</u> <u>New York v. United States Immigration & Customs Enf't</u>, No. 19-cv-8876(JSR), 2020 U.S. Dist. LEXIS 101594, at *3 (S.D.N.Y. June 10, 2020) ("[P]laintiffs here seek injunctive and declaratory relief against ICE's current courthouse arrest policy."); <u>Washington v. United States Dep't of Homeland Sec.</u>, No. C19-2043 TSZ, 2020 U.S. Dist. LEXIS 64585, at *6 (W.D. Wash. Apr. 10, 2020); <u>The State of N.Y. & Eric Gonzalez v. United States Immigration & Customs Enf't</u>, 431 F. Supp. 3d 377, 381-82 (S.D.N.Y. 2019) ("Plaintiffs . . . commenced this suit on September 25, 2019, seeking both declaratory and injunctive relief."); <u>Ryan v. United States Immigration & Customs Enf't</u>, 382 F. Supp. 3d 142, 146 (D. Mass. 2019) ("Pending before the court is Plaintiffs' Motion for a Preliminary Injunction [5], which seeks to preliminarily enjoin

/ / /

/ / /

Defendants from implementing the Courthouse Civil Arrest Directive.")[3] In contrast, Defendant raised the instant motion for injunctive relief in a criminal misdemeanor proceeding against a non-party federal agency.

For the reasons set forth above, Defendant's request for injunctive relief is **DENIED.**

## III.   <u>Motion to Stay</u>

Defendant alternatively moves to stay Defendant's trial "pending an interlocutory appeal and/or writ of mandamus to the district Court." ECF No. 46 at 23.

In ruling on Defendant's request, the Court considers the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

<u>Nken</u>, 556 U.S. at 434 (citation omitted). "The first two factors of the traditional standard are the most critical." <u>Id</u>.

Here, the Court finds these first two critical factors weigh against granting a stay, regardless of the merits of the other factors. First, Defendant has not made a strong showing of his likelihood to succeed on the merits. As already set forth above, Defendant provides no legal authority to show how the undersigned has the authority to issue the relief requested. Second, Defendant has not shown how he would be irreparably injured absent a stay. Defendant is free to pursue his requested injunctive relief in a civil action—like the plaintiffs in the cases he relies upon.

---

[3] Moreover, as noted in the Government's Supplemental Memorandum, the First Circuit recently vacated the preliminary injunction issued by the district court in <u>Ryan</u>, finding that the district court had "abused its discretion in finding that the plaintiffs were likely to succeed on the merits of their argument that the INA implicitly incorporates a common law privilege against civil arrests for individuals attending court on official business." <u>Ryan v. United States Immigration & Customs Enf't</u>, No. 19-1838, 2020 U.S. App. LEXIS 27804, at *5 (1st Cir. Sep. 1, 2020). The First Circuit's decision further undercuts Defendant's request for injunctive relief.

For the reasons set forth above, Defendant's request for a stay pending interlocutory appeal is **DENIED.**

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court **DENIES** Defendant's Second Motion to Dismiss, **DENIES** Defendant's Motion to Prohibit Defendant's Civil Arrest at Court, and **DENIES** Defendant's Motion to Stay the Proceedings.

      **IT IS SO ORDERED.**

Dated:  October 21, 2020

Honorable Linda Lopez
United States Magistrate Judge

11