UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff-Appellee,<br><br>v.<br><br>ULISES ROMEO LUCAS-HERNANDEZ,<br><br>　　　　　　　Defendant-Appellant. | Case No.: 19-MJ-24522-LL-TWR<br><br>**ORDER (1) DENYING DEFENDANT'S APPEAL, AND (2) AFFIRMING CONVICTION**<br><br>(ECF Nos. 61, 67) |

Presently before the Court is Defendant-Appellant Ulises Romeo Lucas-Hernandez's Appeal, (*see* ECF No. 67), of the October 26, 2020 Judgment in a Criminal Case finding him guilty of attempted illegal entry into the United States under 8 U.S.C. §1325(a)(1) and sentencing him to time served. (*See* EFC No. 61 (the "Judgment").) Lucas-Hernandez challenges the conviction on three grounds: (1) the Honorable Linda Lopez erred in allowing the arresting officer to testify to his translation of Lucas-Hernandez's field statements because the translation was hearsay and unqualified expert testimony, (*see* ECF No. 277 ("AOB") at 1, 5–8); (2) the prosecutor presented no evidence that Lucas-Hernandez knew he was not a citizen, (*see id.* at 1, 8–9); and (3) Lucas-Hernandez's prosecution violated equal protection because he was treated differently than similarly situated citizens, (*see id.* at 1, 10, 18–20), and because Congress passed § 1325 with a discriminatory intent. (*See id.* at 1, 10–18.) Plaintiff-Appellee the United States of

America filed a responsive brief, (*see* ECF No. 281 ("RB")), and Lucas-Hernandez filed a reply. (*See* ECF No. 284 ("ARB").) The Court has jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3402 and determines that this matter is suitable for determination on the papers without oral argument. Having carefully reviewed the Parties' briefs, the record, and the relevant law, the Court **AFFIRMS** Lucas-Hernandez's conviction for the following reasons.

## BACKGROUND

### I.  Evidence Introduced at Trial

#### A.  *Lucas-Hernandez's Arrest*

On November 30, 2019, United States Border Patrol Agent Brian Mauler, who was assigned to the All-Terrain Vehicle Unit, was patrolling a dirt road known among Border Patrol Agents as Thirty-Thirty Road, which is located in a sparsely populated area of remote and rugged terrain within the Campo Station area of responsibility approximately three-and-a-half miles north of the Mexico-United States international border and sixteen miles east of the Tecate port of entry. (*See* ECF No. 276 ("Trial Tr.") at 11:10–12:3, 12:12–14:15, 15:7–13, 15:16–20, 21:19–22, 28:24–29:21, 31:10–15, 58:11–18.) Although there is a campground, twelve to fifteen houses, and some Bureau of Indian Affairs buildings in the vicinity, there are no businesses. (*See id.* at 14:10–15:6, 34:1–17, 38:18–25, 45:10–22, 46:22–47:11.)

At approximately 2 p.m., Agent Mauler encountered shoe prints travelling from south to north across Thirty-Thirty Road. (*See id.* at 11:10–12:4, 15:14–15, 17:2–7, 48:25–49:6.) Agent Mauler followed the shoe prints primarily north for approximately five to ten minutes until he encountered a deep sand wash. (*See id.* at 12:4–5, 16:9–15, 18:15–17, 19:5–9, 29:22–30:20, 49:7–9, 57:23–58:10.) When Agent Mauler got close to the edge, he could see three individuals sitting or crouching approximately twenty feet below at the bottom of the sand wash, (*see id.* at 20:1–21:8), one of whom was Lucas-Hernandez. (*See id.* at 24:25–25:11.) Agent Mauler then entered the sand wash to ask the individuals about their citizenship. (*See id.* at 21:9–16.)

Specifically, consistent with his standard procedure, (*see id.* at 24:4–6), Agent Mauler individually asked each person three questions to determine whether they were legally present in the United States: (1) what country they were from, (2) whether they had any immigration documents that allowed them to be in the United States, and (3) whether they had entered the United States illegally. (*See id.* at 23:6–21.) Lucas-Hernandez responded that he was from Mexico, that he did not have any immigration documents to be in the United States, and that he had illegally entered the United States. (*See id.* at 25:14–22, 51:1–3, 57:7–10.) Based on his questions and the responses he received,[1] Agent Mauler placed the three individuals, including Lucas-Hernandez, under arrest and arranged for them to be transported to the Campo Station. (*See id.* at 25:23–26:2.)

### B.   *Lucas-Hernandez's A-File*

The prosecution also introduced testimony from Border Patrol Agent Derrick McCain, Lucas-Hernandez's "A-file custodian." (*See generally* Trial Tr. at 60:18–91:14.) An "A-file" is an "alien file," which consists of documents related to an individual's immigration history in the United States. (*See id.* at 62:2–6.) Each A-file is assigned a unique A-number. (*See id.* at 62:18–63:4.) Agent McCain had reviewed "hundreds" of A-files over the course of his then-nine years' experience as an A-file custodian. (*See id.* at 61:10–11, 63:9–13.)

---

[1] Agent Mauler testified that he "believe[d]" he had addressed the individuals in Spanish, (*see* Trial Tr. at 21:17–18), and that he "believe[d]" that they had responded in Spanish. (*See id.* at 22:23–24.) This is consistent with Lucas-Hernandez's use of a Spanish interpreter at trial, (*see id.* at 3:9–10), and there is no evidence in the record that Lucas-Hernandez's interview was conducted in a language other than Spanish. Indeed, Agent Mauler had conducted "several hundred" such field inspections over his then-nearly twelve-year career, (*see id.* at 23:22–25), with the "vast majority" in Spanish. (*See id.* at 24:1–3.) Agent Mauler further testified that he did not have any trouble communicating with the individuals, and that they did not appear to have any trouble understanding him. (*See id.* at 22:25–23:5, 56:23–57:4.)

Although Agent Mauler had had no prior Spanish language experience before joining the Border Patrol, (*see id.* at 11:1–3), he received two months of Spanish training at the Border Patrol Academy in Artesia, New Mexico. (*See id.* at 10:18–25.) While not "fluent" enough to "have a conversation," (*see id.* at 54:25–55:2), he is now "proficient enough to be able to conduct [his] duties as a Border Patrol Agent." (*See id.* at 11:4–6; *see also id.* at 56:2–8.) Indeed, Agent Mauler has used Spanish on the job "on a daily basis," (*see id.* at 11:7–9), since his employment with the Border Patrol began in December of 2008. (*See id.* at 10:2–4.)

According to Lucas-Hernandez's A-file, he had been removed from the United States to Mexico approximately a dozen times. (*See id.* at 66:18–67:3.) On November 22, 2017, Lucas-Hernandez was removed through the Calexico port of entry and received a warning that he would not be allowed to reenter the United States for twenty years without seeking permission to reapply for admission. (*See id.* at 67:4–70:14.) There are two ways in which a deported alien can apply for permission to reenter the United States: (1) a family member can file a Form I-130 on their behalf, or (2) the alien can file a Form I-212 on their own behalf. (*See id.* at 70:15–25.) Neither Lucas-Hernandez's A-file nor the relevant databases Agent McCain searched contained any documents indicating he had been granted permission to reapply to enter the United States on November 30, 2019.[2] (*See id.* at 71:9–75:10, 87:9–18.)

## II.     Procedural Background

The United States charged Lucas-Hernandez with improper attempted entry under 8 U.S.C. §1325(a)(1) on December 2, 2019. (*See generally* ECF No. 1 ("Compl.").) At his initial appearance, Magistrate Judge F. A. Gossett III appointed Lucas-Hernandez counsel, (*see* ECF No. 3), and Chloe S. Dillon of Federal Defenders entered an appearance as lead counsel on December 3, 2019. (*See generally* ECF No. 6.) Judge Gossett held a detention hearing on December 5, 2019, at which he denied the prosecution's oral motion to detain. (*See generally* ECF Nos. 5, 8.) Judge Gossett allowed Lucas-Hernandez to be released on bond pending trial. (*See* ECF Nos. 7, 8, 11, 12.)

Lucas-Hernandez's case was then transferred to Judge Lopez, (*see* ECF No. 14), and proceeded under the "Streamline" process, (*see* ECF No. 19-1 at 14–15), which, at that time, the United States Department of Justice ("DOJ") used to prosecute misdemeanor illegal entry charges under § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20089

---

[2] The relevant databases Agent McCain searched are the Computer Linked Application and Information Management System ("CLAIMS"), which shows when a Form I-212 is received by the Department of Homeland Security, (*see* Trial Tr. at 71:25–72:5); the Central Index System ("CIS"), which shows an alien's current immigration status, (*see id.* at 72:6–8); and the secondary ENFORCE Alien Removal Module ("EARM"), which lists the removals tied to a particular individual. (*See id.* at 90:19–91:6.)

AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018), *rev'd on other grounds*, 949 F.3d 1202 (9th Cir. Feb. 5, 2020). Following a status hearing before Judge Lopez on January 9, 2020, (*see* ECF No. 18), Lucas-Hernandez moved to dismiss the Complaint, preserve evidence, compel discovery, suppress statements, exclude testimony, and grant leave to file further motions. (*See generally* ECF No. 19 ("1st MTD").) As is relevant to the instant appeal, Lucas-Hernandez argued that dismissal was required because his prosecution in Streamline court violated equal protection, (*see id.* at 5–14), and the charging document did not allege that Lucas-Hernandez knew he was not a United States citizen, (*see id.* at 23–27), and that Agent Mauler's translation of Lucas-Hernandez's field statements was inadmissible as hearsay and unqualified expert testimony. (*See id.* at 28–31.)

At a February 20, 2020 hearing, Judge Lopez largely denied Lucas-Hernandez's First Motion to Dismiss. (*See* ECF No. 21.) Specifically, Judge Lopez denied (1) the Streamline motion to dismiss "for the reasons set forth in the case *United States vs. Gildardo Aguayo-Gallardo*[,] . . . 19CR3058," (*see* ECF No. 279 ("Feb. 20 Tr.") at 3:17–23); (2) the motion to dismiss for failure to allege that Lucas-Hernandez knew that he was not a United States citizen "for the reasons set forth in *United States v. Jose Gabriel Ramos-Moran*, 19CR2984," (*see* Feb. 20 Tr. at 3:24–4:4); and (3) the motion to suppress Agent Mauler's translation as hearsay because "[s]tatements made by a defendant are considered party admissions, not hearsay." (*See id.* at 4:14–19.) Judge Lopez, however, reserved ruling on Agent Mauler "not being an expert" in the Spanish language because "[t]he agent has to lay a proper foundation that what he or she is saying [w]hat [Lucas-Hernandez] said and what the information he obtained from [Lucas-Hernandez was, and] that he was able to understand that." (*See id.* at 4:20–25.)

Following several continuances related to COVID-19, (*see* ECF Nos. 27–38), Judge Lopez held a motion hearing on July 30, 2020, at which time she set a bench trial for October 26, 2020. (*See* ECF No. 45.) On September 1, 2020, Lucas-Hernandez filed a second motion to dismiss that, as is relevant to this appeal, sought dismissal on the grounds

that his prosecution violated equal protection under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). (*See* ECF No. 46 ("2d MTD") at 2–15.) Judge Lopez denied Lucas-Hernandez's Second Motion to Dismiss on October 21, 2020. (*See generally* ECF No. 53; *see also United States v. Lucas-Hernandez*, No. 19MJ24522-LL, 2020 WL 6161150, at *1 (S.D. Cal. Oct. 21, 2020).)

At the October 26, 2020 bench trial, the prosecution offered the testimony of two witnesses: Agent Mauler, (*see* Trial Tr. at 9:14–58:20), and Agent McCain. (*See id.* at 60:18–91:14.) After hearing closing arguments, (*see id.* at 93:24–105:5), Judge Lopez found Lucas-Hernandez guilty of violating § 1325(a)(1). (*See id.* at 105:6–10.) She proceeded to adopt her tentative and sentence Lucas-Hernandez to a sentence of time served, (*see id.* at 105:10–106:16, 108:7–109:11), after hearing from counsel and Lucas-Hernandez. (*See id.* at 106:17–108:6.) Lucas-Hernandez filed a timely notice of appeal on October 28, 2020. (*See generally* EFC No. 67); *see also* Fed. R. Crim. P. 58(g)(2)(B).

## LEGAL STANDARD

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. As such, a "defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." *See* Fed. R. Crim. P. 58(g)(2)(B).

"The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). In reviewing the conviction, the district court must "ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000); *see also United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). Accordingly, the magistrate judge's findings of fact are reviewed for clear error, *see, e.g., United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998), while the magistrate's legal conclusions, including challenges to the sufficiency of evidence and

questions of statutory interpretation, are reviewed de novo. *See, e.g.*, *United States v. Biotronik, Inc.*, 876 F.3d 1011, 1016 (9th Cir. 2017); *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015).

## ANALYSIS

**I. Admission of Agent Mauler's Interpretation of Lucas-Hernandez's Field Statements**

Lucas-Hernandez argues that Judge Lopez "erred in admitting Agent Mauler's English interpretation of Mr. Lucas-Hernandez's field statements" for two reasons. (*See* AOB at 5.) First, Lucas-Hernandez contends that Agent Mauler's statements were inadmissible hearsay because Agent Mauler was not a "mere language conduit" pursuant to *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991). (*See* AOB at 5–6.) Second, Lucas-Hernandez asserts that Agent Mauler was not—and cannot be—qualified as an expert witness under Federal Rule of Evidence 702. (*See* AOB at 5, 7–8.) The government opposes Lucas-Hernandez's arguments, (*see* RB at 4–6), and alternatively argues that any error in admitting Agent Mauler's interpretation of Lucas-Hernandez's admissions was harmless. (*See id.* at 6–8.)

### *A.  Hearsay*

According to Lucas-Hernandez, Agent Mauler's testimony is inadmissible hearsay for two reasons: (1) "Agent Mauler's field interrogatories were offered for the truth of the matter asserted;" and (2) the government did not establish that Agent Mauler was a "mere language conduit" under *Nazemian*, 948 F.2d 522. (AOB at 5–6.) The government responds that Judge Lopez properly admitted Agent Mauler's translation of Lucas-Hernandez's field statements as statements of a party opponent under Federal Rule of Evidence 801(d)(2), (*see* RB at 4), and that Lucas-Hernandez misreads and misapplies *Nazemian*. (*See* RB at 4–5.) The Court agrees with the prosecution.

Rule 801(d)(2)(A) provides that when a statement made by a party is offered into evidence against the party who made the statement, the statement at issue is "not hearsay." Here, Lucas-Hernandez made admissions to Agent Mauler at the time of his apprehension.

Unlike in *Nazemian*—in which the Ninth Circuit addressed "the issue of how to treat extrajudicial statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter," *see* 948 F.2d at 526—Agent Mauler did not rely on an interpreter when questioning Lucas-Hernandez. Further, and also unlike in *Nazemian*, no interpreter was required because Agent Mauler was sufficiently proficient in Spanish to understand Lucas-Hernandez's admissions for the reasons discussed previously. *See supra* note 1. The Court therefore concludes that Judge Lopez did not err in concluding that Agent Mauler's testimony as to Lucas-Hernandez's Spanish field statements was not hearsay.

### B. Qualification as an Expert

Lucas-Hernandez next argues that, "[b]y acting as a Spanish interpreter in his conversation with Mr. Lucas-Hernandez in the field, Agent Mauler was purporting to employ specialized knowledge[,]" meaning "the government had to qualify Agent Mauler as an expert." (*See* AOB at 7.) When Lucas-Hernandez raised this issue in his First Motion to Dismiss, Judge Lopez reserved ruling on it on the grounds that Agent Mauler would have "to lay a proper foundation." (*See* Feb. 20 Tr. at 4:20–25.) Agent Mauler did lay a foundation, *see supra* note 1, and Lucas-Hernandez did not renew his objection at trial. To the extent that the matter is properly preserved for appeal, *see United States v. Gomez-Norena*, 908 F.2d 497, 499–500 (9th Cir. 1990), the Court agrees with the government that "Agent Mauler testified as to matters within his personal knowledge . . . as a lay witness pursuant to Rule 602." (*See* RB at 6.)

Here, Agent Mauler did not testify to any "scientific, technical, or other specialized knowledge," *see* Fed. R. Ev. 702(a), but rather to his "personal knowledge of" the admissions Lucas-Hernandez made to him in the field. *See* Fed. R. Ev. 602. As Judge Lopez recognized, (*see* Feb. 20 Tr. at 4:20–25), so long as Agent Mauler laid a sufficient foundation that "he was able to understand" what Lucas-Hernandez relayed to him, the Court properly may rely on Agent Mauler's testimony. Because Agent Mauler laid a sufficient foundation, *see supra* note 1, Judge Lopez did not err in admitting his testimony.

### C. Harmless Error

The government argues that, even if Judge Lopez did err in admitting Agent Mauler's testimony as to Lucas-Hernandez's admissions in the field, the error was harmless because "[t]he case was proved beyond a reasonable doubt without Defendant's field admissions." (*See* RB at 7; *see also generally id.* at 6–8.) Lucas-Hernandez responds that any error was not harmless because "the prosecutor never argued that the evidence of alienage—in the *absence* of [Lucas-Hernandez's field] admission—would have been sufficient." (*See* AOB at 8 (emphasis in original); *see also generally id.* at 7–8.)

The Court agrees that any error in admitting Lucas-Hernandez's admissions would be harmless beyond a reasonable doubt. Here, Agent Mauler testified that he found Lucas-Hernandez and two other individuals hiding at the bottom of a twenty-foot-deep sand wash in a remote, rugged, and sparsely populated area three-and-a-half miles north of the border between the United States and Mexico. Lucas-Hernandez had no identification or documentation on him, and subsequent review of Lucas-Hernandez's A-file and relevant databases revealed that he had been removed—several times—from the United States to Mexico and that he had not been granted permission to reapply to enter the United States on November 30, 2019. Because this evidence was sufficient for Judge Lopez to find that Lucas-Hernandez was an alien beyond a reasonable doubt, *see, e.g.*, *United States v. Ruiz-Lopez*, 749 F.3d 1138, 1142 (9th Cir. 2014) ("So long as the documents in an A-file have been properly admitted in the criminal case, . . . such documents may be considered by the [trier of fact] and, depending on their contents, may constitute sufficient proof of alienage if the [trier of fact] so concludes."), the Court concludes that any error in admitting Lucas-Hernandez's admissions was harmless beyond a reasonable doubt.

## II. Knowledge of Alienage

Second, as in his First Motion to Dismiss, (*see* 1st MTD at 23–27), Lucas-Hernandez contends that "[k]nowledge of one's citizenship is an element of attempted illegal entry under 1) basic principles of attempt liability and 2) the Supreme Court's recent decision in *Rehaif*." (*See* AOB at 9; *see also generally id.* at 8–9.) After briefing in this appeal had

closed, however, the Ninth Circuit definitively held that "8 U.S.C. § 1325(a) is a regulatory offense, and thus knowledge of alienage is not an element." *See United States v. Rizo-Rizo*, 16 F.4th 1292, 1293 (9th Cir. 2021); *see also id.* at 1298–99. On *de novo* review, *see United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020), the Court therefore rejects Lucas-Hernandez's argument.

## III. Equal Protection

Finally, consistent with his First and Second pretrial Motions to Dismiss, (*see* 1st MTD at 5–12 (Streamline process); 2d MTD at 2–15 (*Arlington Heights*)), Lucas-Hernandez again alleges that his prosecution violates the Equal Protection Clause for two reasons: First, Lucas-Hernandez contends that § 1325 is unconstitutional under *Arlington Heights* because the criminalization of illegal entry was enacted with a discriminatory purpose and has disparately impacted Mexican defendants. (*See* AOB at 10; *see also generally id.* at 10–18.) Second, Lucas-Hernandez claims he was treated differently than similarly situated United States citizens charged with an equivalent crime who were prosecuted in "petty offense court." (*See id.* at 10; *see also generally id.* at 18–20.) Judge Lopez rejected both of these arguments, (*see* ECF No. 21, Feb. 20 Tr. at 3:17–23 (Streamline process); ECF No. 53 at 4–8 (*Arlington Heights*)), and, for the reasons discussed below, so does this Court.

### A. Arlington Heights

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). "[T]he necessary discriminatory racial purpose [need not] be express or appear on the face of the statute." *See id.* at 241. Nonetheless, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *See Arlington Heights*, 429 U.S. at 264–65. Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *See id.* at 265.

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. Relevant considerations include "whether [the impact of the official action] 'bears more heavily on one race than another[;]'" "[t]he historical background of the decision[;]" "[t]he specific sequence of events leading up to the challenged decision[;]" "[d]epartures from the normal procedural sequence[;]" "[s]ubstantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached[;]" and "[t]he legislative or administrative history . . . , especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *See id.* at 266–68.

If this analysis reveals that "a discriminatory purpose is found to be a motivating factor for the government's decision, a court must apply strict scrutiny, as it would to a law involving a facial classification on the basis of race." *See United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441, at *1 (S.D. Cal. Dec. 8, 2020) (citing *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)). "Absent proof of a discriminatory purpose, [however,] courts apply a rational basis standard of review." *See id.* (citing *Arlington Heights*, 429 U.S. at 265–66; *United States v. Dumas*, 64 F.3d 1427, 1430–31 (9th Cir. 1995)).

On appeal, Lucas-Hernandez contends that Judge Lopez erred in denying his motion to dismiss based on the unconstitutionality of § 1325 under *Arlington Heights*. (*See* AOB at 10–18.) Specifically, Lucas-Hernandez argues that Judge Lopez erred in concluding that (1) "two subsequent reenactments of illegal entry in 1952 and 1990 had cleansed the crime of illegal entry of any discriminatory intent[,]" (*see id.* at 11 (citing ECF No. 53 at 4)); (2) "the disparate impact on Mexican defendants was 'more readily explained by the geographic proximity of the border to Mexico and Latin America than by animus[,]'" (*see id.* at 11 (quoting ECF No. 53 at 6)); and (3) "rational basis review applied because § 1325 was an immigration regulation, and . . . [§ 1325] satisfied this test." (*See* AOB at 11 (citing

ECF No. 53 at 7).)  The Court reviews Lucas-Hernandez's challenges *de novo*.  *See United States v. Baker*, 63 F.3d 1478, 1490 (9th Cir. 1995) (citing *United States v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992)).

      Although the Ninth Circuit has yet to weigh in, courts in this District consistently have concluded that Congress did not act with a racially discriminatory motive in enacting § 1325(a)(1).  *See, e.g.*, *United States v. Campos-Atrisco*, No. 19MJ024683KSCBAS1, 2021 WL 5332918, at *4–5 (S.D. Cal. Nov. 16, 2021) (Bashant, J.); *United States v. Gallegos-Aparicio*, No. 19-CR-2637-GPC, 2020 WL 7318124, at *1–4 (S.D. Cal. Dec. 11, 2020) (Curiel, J.); *Rios-Montano*, 2020 WL 7226441, at *2–8 (Curiel, J.); *United States v. Lazcano-Neria*, No. 3:20-mj-04538-AHG, 2020 WL 6363685, at *6–9 (S.D. Cal. Oct. 29, 2020) (Goddard, Mag. J.); *Lucas-Hernandez*, 2020 WL 6161150, at *2–4 (Lopez, Mag. J.); *United States v. Morales-Roblero*, No. 3:19-MJ-24442-AHG, 2020 WL 5517594, at *7–10 (S.D. Cal. Sept. 14, 2020) (Goddard, Mag. J.); *United States v. Ruiz-Rivera*, No. 3:20-MJ-20306-AHG, 2020 WL 5230519, at *2–3 (S.D. Cal. Sept. 2, 2020) (Goddard, Mag. J.).  Like the defendants and appellants to those cases, Lucas-Hernandez argues that § 1325 is "presumptively unconstitutional" under *Arlington Heights* because Congress enacted the Undesirable Aliens Act of 1929 with a discriminatory purpose and it has disparately impacted Mexican defendants.  (*Compare* AOB at 15), *with Campos-Atrisco*, 2021 WL 5332918, at *4; *Gallegos-Aparicio*, 2020 WL 7318124, at *1; *Rios-Montano*, 2020 WL 7226441, at *1; *Lazcano-Neria*, 2020 WL 6363685, at *6; *Morales-Roblero*, 2020 WL 5517594, at *7; *Ruiz-Rivera*, 2020 WL 5230519, at *1.  Lucas-Hernandez provides no justification to depart from these well-reasoned rejections of his arguments on appeal.

      First, although there is no dispute that "[t]he Congressional Record [from the 1920s related to criminalization of illegal entry by aliens] reflects an open hostility to Mexican immigrants based on undeniably racist notions," *see Lazcano-Neria*, 2020 WL 6363685, at *6, "the current crime [Lucas-Hernandez] was charged with—attempted illegal entry—was not added until the Immigration Act of 1990 [(the "1990 Act")] was passed."  *See*

*Campos-Atrisco*, 2021 WL 5332918, at *4 (citing Pub. L. No. 1010-649, § 543(b)(2), 104 Stat. 5059). Rather than address the legislative history of the 1990 Act, (*see* AOB at 11–14 (addressing only legislative history of 1929 statute); ARB at 7–10 (same)), Lucas-Hernandez contends that the original discriminatory intent behind the 1929 statute remains relevant despite subsequent reenactments in 1952 and 1990 based on the Supreme Court's recent decisions in *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 591 U.S. ___, 140 S. Ct. 2246 (2020). (*See* AOB at 11–13.) Other courts within this District, however, have concluded that "*Ramos* and *Espinoza*, neither of which involved an equal protection challenge, did not hold that the discriminatory motivations of a previous legislature are determinative of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature." See *Rios-Montano*, 2020 WL 7226441, at *4 (first citing *Ramos*, 140 S. Ct. at 1401; then citing *Espinoza*, 140 S. Ct. at 2258–59); *accord Gallegos-Aparicio*, 2020 WL 7318124, at *2; *Lazcano-Neria*, 2020 WL 6363685, at *7–8; *Morales-Roblero*, 2020 WL 5517594, at *9–10; *Ruiz-Rivera*, 2020 WL 5230519, at *3. The Court therefore "looks to the intent of Congress in passing the more recent iterations of the Immigration Act rather than the intent of previous Congresses." See *Campos-Atrisco*, 2021 WL 5332918, at *4; *accord Gallegos-Aparicio*, 2020 WL 7318124, at *3; *Rios-Montano*, 2020 WL 7226441, at *4; *Lazcano-Neria*, 2020 WL 6363685, at *7; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3. Lucas-Hernandez, however, has not demonstrated that "the legislative history for the 1990 legislation . . . reveal[s] any discriminatory motive." *See Campos-Atrisco*, 2021 WL 5332918, at *4 (quoting *Rios-Montano*, 2020 WL 7226441, at *7); *accord Gallegos-Aparicio*, 2020 WL 7318124, at *3–4; *Rios-Montano*, 2020 WL 7226441, at *4–7; *Lazcano-Neria*, 2020 WL 6363685, at *6; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3; (*see also* AOB at 11–14 (failing to address legislative history of 1990 Act); ARB at 7–10 (same)).

Second, "although Latinx people are likely disproportionately affected by Section 1325, the disparate impact alone . . . is not stark enough to show discriminatory motive,

given that the disparity is explainable on grounds other than race." *Campos-Atrisco*, 2021 WL 5332918, at *5 (alteration in original) (quoting *Rios-Montano*, 2020 WL 7226441, at *8). As Judge Bashant explained, these other grounds include:

> [t]he proximity of Mexico and Central American countries to the United States, the ability to come to the United States on foot rather than the need for a ship or plane, and the fact that a disproportionate number of individuals from these countries are coming to the United States because of political and economic situations in their own countries.

*See id.* Accordingly, the Court agrees with Judge Lopez that Lucas-Hernandez has failed to carry his burden of establishing that Congress acted with a racially discriminative motive in enacting § 1325 such that his conviction is unconstitutional under *Arlington Heights*. *See Campos-Atrisco*, 2021 WL 5332918, at *5; *Gallegos-Aparicio*, 2020 WL 7318124, at *4; *Rios-Montano*, 2020 WL 7226441, at *8; *Lazcano-Neria*, 2020 WL 6363685, at *8; *Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *3.

Third, absent evidence of a discriminatory motive, an equal protection challenge to a facially neutral law such as § 1325 is subject to rational basis review. *See Arlington Heights*, 429 U.S. at 265–66; *see also United States v. Ayala-Bello*, 995 F.3d 710, 714–15 (9th Cir.) (applying rational basis test to prosecution of aliens under § 1325(a)(1) in streamline process because "criminal defendants are not a protected class," "disparate impact [on aliens] does not prove disparate treatment[,]" and "[f]ederal classifications based on alienage receive rational basis review" (first citing *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007); then citing *Wayte v. United States*, 470 U.S. 598, 610 (1985); finally citing *Sudomit v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985))), *cert. denied*, 142 S. Ct. 513 (2021); *Rios-Montano*, 2020 WL 7226441, at *1; *Lazcano-Neria*, 2020 WL 6363685, at *8; *Morales-Roblero*, 2020 WL 5517594, at *3, *10; *Ruiz-Rivera*, 2020 WL 5230519, at *4. As Judge Lopez explained, "[t]he rational-basis test is deferential and is met when a law is rationally related to a legitimate government purpose." *Lucas-Hernandez*, 2020 WL 6161150, at *3 (first citing *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011); then citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312,

320 (1993)); *accord Ayala-Bello*, 995 F.3d at 715 (quoting *Heller*, 509 U.S. at 320). This requires Lucas-Hernandez to "negate 'every conceivable basis which might support [the legislative classification].'" *See Ayala-Bello*, 995 F.3d at 715 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). As other courts in this District have concluded, Lucas-Hernandez cannot meet this heavy burden because "the United States has a legitimate interest in deterring illegal entry, and § 1325(a)(1) serves that interest." *See Lazcano-Neria*, 2020 WL 6363685, at *7; *accord Morales-Roblero*, 2020 WL 5517594, at *10; *Ruiz-Rivera*, 2020 WL 5230519, at *4; *see also United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998) ("In fact, it is plain that [Section] 1326 [of Title 8 of the United States Code] is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution that it provides, Congress's immigration-regulation authority would be fatally undermined—all bark and no bite.").

For these reasons, the Court concludes that Judge Lopez did not err in concluding that § 1325(a)(1) does not violate the Equal Protection Clause. Accordingly, the Court denies Lucas-Hernandez's appeal on this ground.

### B.     Streamline Process

Finally, Lucas-Hernandez contends that he was subjected to disparate treatment in violation of the Equal Protection Clause when he was prosecuted in ordinary criminal court under the Streamline process rather than in petty offense court. (*See* AOB at 18–20.) As with Lucas-Hernandez's argument concerning knowledge of alienage, *see supra* Section II, the Ninth Circuit rejected this argument during the pendency of this appeal. *See generally Ayala-Bello*, 995 F.3d at 713–14, 716 (holding that the government does not violated equal protection by prosecuting illegal border crossings on the normal criminal docket). Accordingly, on *de novo* review, *see Baker*, 63 F.3d at 1490, the Court denies Lucas-Hernandez's appeal on this ground. *See, e.g.*, *Campos-Atrisco*, No. 19-MJ-024683-KSC-BAS1, 2021 WL 5332918, at *5 (S.D. Cal. Nov. 16, 2021) (summarily dispensing of identical equal protection argument based on the Ninth Circuit's decision in *Ayala-Bello*).

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Lucas-Hernandez's Appeal (ECF No. 67) and **AFFIRMS** his conviction (ECF No. 61).

**IT IS SO ORDERED.**

Dated: May 17, 2022

_____
Honorable Todd W. Robinson
United States District Court